Mark L. Smith (#14762)
msmith@smithwashburn.com
**SMITH WASHBURN, LLP**
6345 South Pecos Road, Suite 202
Las Vegas, Nevada 89120
Telephone: (725) 666-8701
Facsimile: (725) 666-8710

*Attorneys for Reflex Media, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AARON WALLACE, an individual, *et al.*,<br><br>Defendant. | Case No. 2:18-cv-02423-RFB-BNW<br><br>**PLAINTIFF REFLEX MEDIA, INC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT AARON WALLACE'S COMPLETE RESPONSES TO FIRST SET OF JURISDICTIONAL DISCOVERY** |

Plaintiff Reflex Media, Inc. (*"Reflex"*) hereby submits its Reply in Support of Plaintiff Reflex Media, Inc's Motion and Memorandum in Support of Motion to Compel Defendant Aaron Wallace's Complete Responses to First Set of Jurisdictional Discovery (its *"Reply"*). Reflex respectfully requests that the Court grant its Motion and Memorandum in Support of Motion to Compel Defendant Aaron Wallace's (*"Wallace"*) Complete Responses to First Set of Jurisdictional Discovery (the *"Motion to Compel"* or the *"Motion"*) for the reasons set forth below and in its moving papers.

DATED: September 17, 2020

                                          **SMITH WASHBURN, LLP**
                                          /s/ Mark L. Smith
                                          *Attorneys for Reflex Media, Inc.*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

    I.    Introduction ................................................................................................................. 1

    II.    Argument .................................................................................................................... 1

        (a)    Reflex met and conferred with Wallace *multiple times* on all of the issues raised in Reflex's Motion, including his Reflex Accounts. ..................................................................... 1

        (b)    Wallace is still actively concealing information and documents. ................................ 3

        (c)    Discovery of information regarding the PredatorsAlerts and related websites was expressly ordered by the Court, and Wallace agreed to such discovery. ................................. 6

        (d)    Wallace' s arguments under FRCP 26(b)(2)(C)(i) are nonsensical and try to act as a cover for his dishonesty. ........................................................................................................ 9

        (e)    Wallace still owns his administratively dissolved and suspended companies and must produce their documents. ..................................................................................................... 10

        (f)    Wallace's argument on the applicability of Reflex's jurisdiction clause is nothing more than an admission that he failed to truthfully respond to discovery. ..................................... 11

        (g)    Wallace's old and new objections are all still boilerplate, and his new objections are untimely. ............................................................................................................................. 11

    III.    Conclusion ................................................................................................................ 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In his Opposition, Defendant Aaron Wallace admits two things: first, that he has falsely denied facts and the existence of information and documents until being shown contrary proof, and second, that he has withheld documents and information this entire time. Wallace is attempting to convert "discovery" practice into "confirmation" practice; Reflex cannot learn anything if Wallace is allowed to continue misleading Reflex and the Court about his connections to this case.

Wallace began this campaign in his first sworn declaration to the Court (in support of his motion to dismiss), then providing false information in multiple verified discovery responses and declarations in support of briefing, and now, again, making false statements in his Opposition to the current Motion presented to the Court.

This is not a mistake. It's the continuation of the deception he used when running several extortion websites without personal detection. And it's ongoing; when Wallace was recently deposed, he responded "I don't recall" approximately 290 times, "I don't remember" approximately 70 times, and "I don't know" approximately another 70 times. For his roughly six hours on the record, that's more than once a minute. Reflex asks this Court to order Wallace to comply with his discovery duties as well as sanction him for his false statements under oath and disruptive and evasive conduct in discovery.

## II. ARGUMENT

### (a) REFLEX MET AND CONFERRED WITH WALLACE *MULTIPLE TIMES* ON ALL OF THE ISSUES RAISED IN REFLEX'S MOTION, INCLUDING HIS REFLEX ACCOUNTS.

Wallace argues that Reflex "never" raised on meet and confer calls whether Wallace had accounts on Reflex's websites and that had Reflex done so Wallace would have of course disclosed the existence of his Reflex accounts. This is months after Wallace was asked directly if he had an account with Reflex, and he denied it over and over again—under oath—even though at all times he knew he had accounts with Reflex. And Reflex is sure Wallace knew he had accounts on Reflex's websites because he logged into one in February 2020, just two months before he received

1  jurisdictional discovery requests on April 22, 2020, and also logged into the websites several times
2  in 2018 and 2019 (both before and after Wallace was named as a Defendant on February 26, 2019).
3  (*Compare* ECF No. 193-18 at p. 4 *with* ECF No. 84.)

4        With full knowledge that he had Reflex accounts, Wallace responded to jurisdictional
5  discovery requests three times, never admitting that he had an account with Reflex. In his initial
6  verified discovery responses from May 22, 2020, Wallace responded "denied" (without raising
7  any specific objections) to Request for Admission No. 24 which requested Wallace to "Admit that
8  YOU signed up for one or more accounts on at least one of the REFLEX WEBSITES." Wallace
9  did not correct his denial again in his Supplemental Responses on June 22, 2020 (ECF No. 193-5
10 p. 15), nor did he correct himself again in his Second Supplemental Responses on July 24, 2020
11 (ECF No. 193-6 at p. 48), and even added the following verified statement in response to Request
12 for Production No. 1: "The Defendant has **not** communicated, conducted financial transactions, or
13 **created any accounts with any of the REFLEX WEBSITES** [REFLEX WEBSITES includes
14 Seeking.com and SeekingArrangement.com]." (ECF No. 193-6 at p. 17 (emphasis added).) And
15 as Wallace points out, Wallace was on notice that Reflex requested information related to his
16 Fishmastur account on July 9 (ECF No. 195 at p. 4) but again, did not correct his false statements.

17       Reflex also participated in three separate meet-and confer calls totaling nearly five hours
18 of call time to discuss Wallace's deficient discovery responses and the issues in Reflex's moving
19 papers. (ECF No. 193-1 at ¶¶ 2, 4.) Reflex covered every discovery question at issue with Wallace.
20 (ECF No. 193-1 at ¶¶ 2-21.) Reflex even had these calls recorded and transcribed to prevent
21 Wallace from misstating what was said. Yet, even though Wallace has copies of all of these meet-
22 and-confer call recordings and relevant transcripts, he has again fabricated what these calls
23 contained to attempt to prop-up his position that Reflex did not sincerely meet and confer.

24       Wallace states in his Opposition: "Plaintiff never raised the issue [that Wallace was
25 withholding information and documents regarding his Seeking Arrangement website accounts]
26 during the three (3) previous meet and confer calls between counsel. Had Plaintiff actually raised
27 the issue instead of concealing it to support a motion for sanctions, Wallace could have and would
28

have corrected his reasonable mistake." (ECF No. 195 at p. 4.) This is false and no mistake at all. The transcripts of the meet-and-confer calls show that Reflex addressed the issue in depth. (*See* July 31 Meet-and-Confer Transcript (*"Exhibit 1"*) at pp. 61-63; *also* July 6 Meet-and-Confer Transcript (*"Exhibit 2"*) at p. 71–76.) On a July 31 call, the following exchange occurred:

> [Reflex's counsel]: I'm pretty confident [Wallace] did [have Reflex accounts].
> […]
>
> [Wallace's counsel]: Yeah. I mean, I understand that you're confident. I just don't understand why you're confident that he did. […]
>
> [Reflex's counsel]: Because we think that there's a connection between some of the things that end up on the various websites and the timelines and his operation of those websites. […]
>
> […]if he [Wallace] had these [Reflex] accounts, he's had a duty to disclose them for months now. You're telling me the responses are verified, and so he's saying unquestionably he did not. I'm telling you we're going to go look, and if we find something, you know, we're going to move on it. And so he should tell us now rather than keep playing this hide-the-ball game.

(Exhibit 1 at p. 63.) But **again, Wallace did not correct his false statements** between July 31 and, when Reflex filed its current Motion.

Then, on August 7, 2020, Oath Inc. (the operators of Yahoo) produced documents showing that Wallace's Fishmastur@Yahoo.com account was indeed owned by Wallace and confirmed Reflex's suspicions. (*See* ECF No. 193-19.) Had Reflex not been able to prove that Wallace was not telling the truth, it's clear that Wallace would have never changed his prior false statement. But now, Wallace essentially argues that it was Reflex's fault that it could not convince him to tell the truth earlier. (ECF No. 195 at p. 4.) A more backwards argument would be hard to find.

**(b) WALLACE IS STILL ACTIVELY CONCEALING INFORMATION AND DOCUMENTS.**

Wallace's false denials about Reflex accounts are not his only patently false statements to the Court or during discovery, or even in his current Opposition. Wallace now states in his opposition that "Wallace's fishmastur email account forwards all incoming messages to other

email accounts and Wallace reviewed such accounts."[1] (ECF No. 195 at p. 12.) But during his deposition just four days earlier, Wallace directly contradicted this statement. In response to the question "Did you check your [fishmastur] account, for example?" Wallace responded:

> I did not check it specifically. I do believe that I logged in. I saw on the subpoena that I logged in. I want to say a year ago or two years ago, probably. But I don't remember what -- I think **I unforwarded the e-mail** or something like that. It wasn't anything to like -- it gets a lot of spam. Hundreds of thousands of spam, I believe. It's a useless e-mail.

(Exhibit 3 at p. 191 (emphasis added).) Wallace couldn't identify any email account he searched in his deposition. When asked, "So when you look for documents in this case, can you give me a list of e-mail addresses that you looked through?" Wallace responded, "I don't have access to the e-mail addresses." (*Id.* at pp. 190-191.) And then in the follow up, Reflex's counsel asked "Which ones [emails accounts] did you actually look in? That's what I'm getting at. If you didn't have access to others, which ones did you look at?" And Wallace responded: "I don't recall. I don't have any e-mails to look through for these documents." (*Id.* at p. 191.)

Wallace cannot now change the facts to suit his Opposition. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) (citation omitted) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"). Furthermore, it seems impossible for Mr. Wallace's offer to "Provide A Sworn Declaration Regarding His Search Efforts Upon Court Order or Request" to be meaningful at this juncture. Wallace has already said that he either doesn't recall his recent search efforts or that he didn't attempt any search at all.

This pattern of denial and then reluctant admission of a fact when presented with evidence is par for the course for Wallace. Wallace first denied that he owned and operated two other extortion websites like ExposingJohns.com and PotentialPredators.com (which according to Wallace have the same exact owners and operators—Wallace and his partner, Daniel Achille) (*compare* ECF No. 193-4 at pp. 44-45 *and* ECF No. 193-6 at p. 15), but later admitted that he also owned PotentialProstitutes.com and TheOnline-Watch.com. Wallace, again, did not correct

---

[1] Notably, after several declarations by both Wallace and his counsel throughout this case, no statements are made under oath in support of Wallace's Opposition to this Motion.

1  himself in his supplemental responses on June 22 (ECF No. 193-5 at p. 15) or even in his
2  Opposition to Reflex's First Motion to Compel (ECF No. 184). But after Reflex presented
3  evidence in its First Motion to Compel that he gave false statements, Wallace finally admitted that
4  he did own these websites on July 22. (*Compare* ECF No. 178 at pp. 18-19, ECF Nos. 178-7 and
5  178-8 *with* ECF No. 193-6 at pp. 46-47.) And then in his deposition, Wallace could not recall,
6  even when shown that PredatorsWatch.com had virtually identical webpage source code to another
7  one of his sites, whether he also owned that site, even though he had previously denied owning it.
8  (Exhibit 3 at pp. 167–170, 172–173; ECF No. 193-3 at p. 51.)

9        Wallace also still persists in denying that he has a relationship with a former defendant in
10 this case, Marca Global. (ECF No. 195 at p. 12.) He declared under oath on April 2, 2019 that: "I
11 have no relationship with Defendant Marca Global, LLC or InternetReputation.com […]" (ECF
12 No 113-2 at ¶ 14) even though he had a relationship with that entity, having received payments
13 from them and even having had banners on his website, ExposingJohns.com, linking to Marca
14 Global's website, InternetReputation.com. (*See* ECF Nos. 193-26, 193-27, 193-28.)

15       Wallace, in the same April sworn declaration to this Court stated, "Due to irreconcilable
16 differences with **one of my partners**, […] we shut the website [ExposingJohns] down sometime
17 in 2015." (ECF No. 113-2 at ¶ 9 (emphasis added).) However, when answering discovery, he stated
18 that "DANIEL ACHILLE was the only individual who was an owner and operator of the [sites]
19 other than the Defendant." (ECF No. 193-6 at p. 15.) And just to make sure that Wallace was not
20 making some sort of further limitation to his response, Reflex's counsel asked Wallace's counsel
21 on a July 31 meet-and-confer call, "Are you limiting any of your responses to this idea that
22 someone has to be an owner and an operator?" and Wallace's counsel said "no" … "owner and
23 operator," "Owner only. Operator only. Whatever." (Exhibit 1 at p. 41-42.) But when asked at
24 Wallace's deposition whether several other individuals were involved in ExposingJohns (and other
25 extortion websites), Wallace replied that he didn't recall. For instance, when asked whether Brett
26 Thompson "work[ed] on Exposing Johns or any of the sites like it," Wallace responded, "I don't
27 recall." (Exhibit 3 at p. 214.)

28

Courts have routinely held that these types of false responses (and the above examples are just a small number of examples) are deserving of sanctions, including default judgement. *See, e.g.*, *Englebrick v. Worthington Indus., Inc.*, 620 F. App'x 564, 566–67 (9th Cir. 2015) (affirming terminating sanctions where a party "repeatedly lied under oath" and therefore it was "impossible for the Court to believe a word that [the party has] to say."); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916–17 (9th Cir. 1987) ("Courts have inherent equitable powers to [impose sanctions] for [...] abusive litigation practices," including "willful deceit of the court"); *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) ("It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct".); *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) ("There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." … "it was a reasonable inference that if there was other discoverable material harmful to its case that its adversaries did not know about, it would be hidden forever"). Wallace has made it impossible to trust anything he says, and the Court should sanction him for this conduct. *See Id.*

### (c) Discovery of information regarding the PredatorsAlerts and related websites was expressly ordered by the Court, and Wallace agreed to such discovery.

Wallace complains that Reflex has propounded merits-based discovery by asking for payments and correspondence to connect Wallace to PredatorsAlerts and argues that Reflex can only pursue information and documents regarding "Wallace's relevant contact with Nevada." (ECF No. 195 at p. 6.) But the Court has already heard arguments regarding Wallace's connection to Nevada. Reflex's counsel stated: "[..]the allegations also bolster that by saying the harm took place when somebody reaches out and affects a company in Nevada […]" And Judge Boulware responded, in part: "Well, that's the part I'm not -- I'm not focused on." (ECF. No. 174 at p. 5.)

Wallace's defense in his motion to dismiss that triggered jurisdictional discovery was the contention that he does not own or operate the PredatorsAlerts websites (*see* ECF No. 113 at p. 12), and so the Court ordered discovery on this specific issue. Specifically, the Court ordered discovery into evidence that might connect Wallace to the PredatorsAlerts websites, stating that it

would allow discovery into "any **correspondence or connection through payment, correspondence, or other means that Mr. Wallace might have to these [PredatorsAlerts] or related websites**." (ECF No. 174 at p. 9.) And the Court allowed merits-based discovery into **related websites** (presumably to unmask Wallace's "several" claimed partners (ECF No. 113-2 at ¶ 9) and give Reflex the chance to investigate Wallace's connections to the PredatorsAlerts websites through them as well), and allowed Reflex to investigate time periods when those websites were active, which here (according to Wallace himself) was from 2012 to 2015. (ECF No. 193-6 at p. 12.) Magistrate Judge Weksler agreed, stating that information going back to January 1, 2012 is "fair game." (*See* ECF No.188 at pp. 13-14.)

It doesn't matter what Wallace wants to call it; Reflex conducted the jurisdictional discovery the Court ordered. Wallace cannot defy the Court's orders now, particularly given that his counsel agreed to this exact scope of discovery:

> The Court: [… I]n a case like this one, there would seem to me to be legitimate requests made to Mr. Wallace with respect to correspondence regarding these various websites. There are other potential payments he may have received from their operation. I am asking you what limits do you think should be placed upon the jurisdictional discovery in this [] case.
>
> [Wallace's counsel]: Your Honor, I don't believe [] there's a need for any additional limitations beyond the – whatever the current limitations are to jurisdictional discovery. I think that my client should be more than willing to disclose and help assist in any acts – in any discovery which would show the true identity of those behind this alleged extortion scheme.

(ECF No. 174 at p. 8.) And even if the scope of permitted discovery here includes merits issues, that's entirely proper. Under circumstances "where the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits, a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979); *see Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38–39 (9th Cir. 1978). Thus, for the scope of jurisdictional discovery to include issues entangled with the merits is reasonable here and

was expressly directed by the Court. *See id*.

Wallace is now simply balking at the Court ordered jurisdictional discovery because he knows that he is connected to the facts of the case and has been caught in deception after deception which he has used to cover his tracks. *See Valley Engineers,* 158 F.3d at 1058 ("it was a reasonable inference that if there was other discoverable material harmful to [the party's] case that its adversaries did not know about, it would be hidden forever").

This includes failing to identify several financial institutions and produce related documents to Reflex which the Court ordered was part of jurisdictional discovery. (ECF No. 174 at p. 9; ECF No. 188 at p. 13 (Magistrate Judge Weksler: "I think that any identification of financial institutions where Mr. Wallace had accounts would be fair game.").) For instance, Wallace failed to divulge his cryptocurrency accounts or produce related documents in his written discovery even though these accounts were specifically requested (ECF No. 193-3 at pp. 18-19, 26, and 51-52.) Wallace cannot claim that cryptocurrency is not relevant, as the complaint is full of detail regarding the payment of cryptocurrency for removals from the PredatorsAlerts websites and ExposingJohns.com. (ECF No. 84 at ¶¶ 3, 20, 26, 27, 34.)

When asked at his deposition, "did you reach out to any of the cryptocurrency companies for your records in response to this case?" Wallace responded "No." (Exhibit 3 at p. 193.) But Wallace revealed that he had accounts at Coinbase, Gemini, and Bittrex. (*Id.* at p. 173-174.) He also revealed that he only searched for Bank of America records in response to discovery but that he also had a Capital One account for which he did nothing. (*Id.* at pp. 30, 52-53,111, 192.)

Reflex was forced to expend substantial time and resources to locate where Wallace has financial accounts (including cryptocurrency), send costly subpoenas, and pay those companies for their productions. All the while, Wallace has sat back and ignored his own discovery responsibilities and denied Reflex access to information and documents to which it is entitled to under the Court's orders. (ECF No. 174 at p. 9;) *see* FRCP 33(b), FRCP 34(b)(2), FRCP 36(a)(5); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009).

And even though Reflex has sent several subpoenas, it has not obtained documents with

regard to several financial records, such as those from Shopify, Capital One, and Wallace's cryptocurrency accounts at Coinbase, Bittrex and Gemini, as well as several others. Furthermore, Reflex has not obtained any records regarding correspondence related to PredatorsAlerts and related websites because Wallace refuses to attempt to retrieve those records even though they are within his possession, custody or control. (*See* Exhibit 3 at p. 191.) Reflex has therefore been prejudiced by Wallace's refusal to meaningfully participate in discovery.[2]

### (d) WALLACE'S ARGUMENTS UNDER FRCP 26(B)(2)(C)(I) ARE NONSENSICAL AND TRY TO ACT AS A COVER FOR HIS DISHONESTY.

Wallace now raises Federal Civil Rule 26(B)(2)(i) in his Opposition, which allows the Court to limit discovery when "the discovery sought …can be obtained from some other source that is more convenient, less burdensome, or less expensive." (*See* ECF No. 195 at 9.) This exception does not apply here. It applies when the information is equally accessible by both parties and not within one party's possession, custody or control. *See* FRCP 26(b)(2)(C)(i).

That's not the case here. Wallace is the only person who knows where he holds and has held accounts, *including accounts he still hasn't disclosed, and that Reflex hasn't yet found*. That information is not equally available; it is uniquely within Wallace's control. Similarly, his documents are directly available to him but not to Reflex. Wallace can request the information sought from the financial institutions where is he an accountholder, but Reflex can only obtain it by a Rule 45 subpoena, which is costly and time consuming and in which recipient has the protections afforded to a nonparty (resulting in lengthy delays). Wallace cannot say that it is more convenient for Reflex to subpoena third parties than it is for him to simply get it himself.

Under Wallace's logic, litigants would never have to provide their financial information or any information held for them by a third party—or even disclose that any of that financial information exists—and instead can simply insist that their opponents resort to their own

---

[2] Reflex has also been prejudiced because it was forced to take Wallace's deposition without him first producing meaningful documents, and also for taking up Reflex's jurisdictional discovery time by promising a production of documents upon agreement to a protective order, unnecessarily stalling on that agreement, and then purposefully giving Reflex the same documents Wallace knew Reflex already had.

1  independent investigation and Rule 45 subpoenas in all cases. And Wallace provides no relevant
2  authority to support this argument, because it is not the law. FRCP 26(b)(2)(C)(i), 34(b)(2);
3  *Earhugger*, 257 F.R.D. at 217; *also E.E.O.C. v. Randall Ford, Inc.*, 298 F.R.D. 573, 575 (W.D.
4  Ark. 2014) (quoting *Coffeyville Resources Refining & Marketing, LLC v. Liberty Surplus Ins.
5  Corp.*, 2008 WL 4853620, at *2 (E.D.Ark. Nov. 6, 2008)) (finding that a party may seek to obtain
6  identical documents from its opponent and third parties, reasoning that differences may appear
7  within the documents produced); *also Hamilton Partners, L.P. v. Highland Capital Mgmt.*, L.P.,
8  No. CV 6547-VCN, 2016 WL 612233, at *6 (Del. Ch. Feb. 2, 2016) (interpreting Delaware's
9  nearly identically worded Rule 26 limitation, holding that discovery to a party and a third party
10 are not duplicative because ***different documents may be produced and because documents from***
11 ***third parties may allow a party to test the truth of the discovery obtained from their opponent***).
12      Wallace should not be able to stonewall, deceive, and force Reflex to engage in costly
13 independent investigation and subpoena practice just so he can avoid asking his banks for
14 documents which he initially claimed didn't exist. (*See* ECF No. 193-4 at p. 9.)

        **(e) WALLACE STILL OWNS HIS ADMINISTRATIVELY DISSOLVED AND SUSPENDED COMPANIES AND MUST PRODUCE THEIR DOCUMENTS.**

16      Nearly every one of the "Wallace Companies" is still under Wallace's control and
17 Wallace thus has a legal right to those companies' documents. Except for Hype Media, LLC and
18 PetZippy, LLC, Wallace is listed as the sole member and officer and/or manager of each of the
19 Wallace Companies, some of which are either still active or merely administratively dissolved
20 because Wallace failed to submit dissolution papers or wind down his companies. (ECF No. 178-
21 5.) As a manager or member, Wallace still controls each of them under Louisiana and Florida
22 law. *See* La. Stat. Ann. § 12:1311; *also* La. Stat. Ann. § 12:1312(a); *also* Fla. Stat. Ann. §
23 605.0407 (b) (2)–(3).
24      Most of Wallace's companies still exist today. With the exception of Hype Media, LLC
25 and PetZippy, LLC, the other companies are either active (InternetIncome, LLC and Inspire Uplift
26 LLC), inactive and pending reinstatement (Blue Rabbit Agency, LLC) or merely inactive but not

dissolved. Florida companies Rep Ten, LLC; Envato, LLC; Net Funds LLC; SocialPro LLC, Web Rank Services LLC state that each are in a state of "ADMIN DISSOLUTION" ([ECF No. 178-5](ECF No. 178-5)), but as Florida law makes clear, "[a] corporation administratively dissolved continues its corporate existence [….]" Fla. Stat. Ann. § 617.1421; *also* Fla. Stat. Ann. § 605.0707. And Louisiana limited liability companies EIncome, LLC; Enhanced White, LLC; MoneyRespect, LLC; Olde Towne Cigar Shoppe, LLC; SevenFig, Inc.; and SixFigure, LLC are all merely inactive and have had their articles of organization revoked ([ECF No. 178-5](ECF No. 178-5)), but this does not dissolve the business. *See* La. Stat. Ann. § 12:1308.2(g); also, La. Stat. Ann. §§ 12:1334, 12:1335, and 12:1339.

Despite Wallace's incorrect legal conclusion regarding administratively dissolved and suspended companies ([ECF No. 195](ECF No. 195) at p. 11), Wallace's companies still exist and their documents are still within his control. And Wallace must produce accordingly, including documents held by third parties. *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (emphasis added); *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

  **(f) WALLACE'S ARGUMENT ON THE APPLICABILITY OF REFLEX'S JURISDICTION CLAUSE IS NOTHING MORE THAN AN ADMISSION THAT HE FAILED TO TRUTHFULLY RESPOND TO DISCOVERY.**

In defense of his failure to disclose the existence of his Reflex accounts, Wallace attempts to argue whether the jurisdiction clause in those accounts' Terms of Use applies to him. But this argument is irrelevant on this *motion to compel*. This Motion is about Wallace's failure to disclose those accounts and produce the related documents. Wallace has failed in this regard and admits it in his Opposition. And this admission dictates the outcome: he should be ordered to disclose and produce and should be sanctioned as well for his repeated failure to do so. FRCP 37(a)(3)(b) and (a)(5), *see Valley Engineers,* 158 F.3d at 1058. As for the applicability of the clause, because Wallace logged into the website over the last year, and to the extent that Wallace is a Commercial User, Reflex is confident it will prevail on that argument if or when the time comes to make it.

  **(g) WALLACE'S OLD AND NEW OBJECTIONS ARE ALL STILL BOILERPLATE, AND HIS NEW OBJECTIONS ARE UNTIMELY.**

Wallace's original, supplemental and second supplemental objections are all still

boilerplate and untimely. Instead of adding any context to his original objections, Wallace added objections that did not appear in his original responses. That is not permissible.

For instance, his objections to the definitions of several individuals such as Sean Hornberger *added* an irrelevancy objection because that individual was not named in the Second Amended Complaint as an owner or operator of the WALLACE COMPANIES. (ECF No. 193-3 at p. 15.) But Reflex asked about this individual (and several other individuals whose definitions are objected to in the same way (ECF No. 193-3 at pp. 8-18) to see whether they were an owner or operator of the PredatorsAlerts websites or their predecessor websites such as ExposingJohns.com – in other words, Wallace's new objection is non-sensical. And he adds the objection to Interrogatory No. 1 that the identification of all FINANCIAL INSTITUTIONS that the WALLACE COMPANIES has had accounts at is "unnecessary to determine whether the court may exercise personal jurisdiction over Defendant." Again, this new objection is non-sensical as the Court has already deemed this information relevant. (ECF No. 188 at p. 13 ("…any identification of financial institutions where Mr. Wallace had accounts would be fair game").)

And even if any new objection applied, they are still impermissible as untimely. S*ee Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). Wallace makes new objections that did not appear in his original objections throughout his supplemental and second supplemental responses. This is not permissible. *Id.* It is telling that Wallace, in his Opposition in which he used thirteen pages failed to cite one example in which he gave any useful further explanation to his original objections.

### III. CONCLUSION

For the reasons provided herein and previously given, Reflex asks this Court to enter the orders Reflex requested in its Motion to Compel and any other orders as the Court sees fit.

DATED: September 17, 2020    **SMITH WASHBURN, LLP**
/s/ Mark L. Smith
*Attorneys for Reflex Media, Inc.*

REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO. 2:18-CV-02423, PAGE 12

# CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2020, the foregoing **PLAINTIFF REFLEX MEDIA, INC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT AARON WALLACE'S COMPLETE RESPONSES TO FIRST SET OF JURISDICTIONAL DISCOVERY** was served on the person(s) named below via CM/ECF:

Michael Carrigan
SPIEGEL & UTRERA, P.C.
1785 E. Sahara Avenue, Suite 490
Las Vegas, NV 89104
Email: attorneycarrigan@amerilawyer.com

Nicolas W. Spigner
SPIEGEL & UTRERA, P.C.
8939 S. Sepulveda Blvd., Suite 400
Los Angeles, CA 90045
Email: attorneyspigner@amerilawyer.com

*Attorneys for Aaron Wallace*

/s/ Pia Martinez