**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AARON WALLACE, *et al.*,<br><br>Defendants. | Case No. 2:18-cv-02423-RFB-BNW<br><br>**ORDER** |

Before the Court is Plaintiff Reflex Media's Motion for Entry of Default Judgment. ECF No. 431. For the following reasons, the Court grants the Motion for Default Judgment and enters judgment in favor of the Plaintiff against Defendants Daniel Achille ("Achille") and Arman Ali ("Ali" and together with Achille, the "Defaulting Defendants").

### I.   PROCEDURAL HISTORY

The Court recites procedural history relevant to the instant motion.

On August 16, 2018, Plaintiff filed a Complaint in the District of Northern California. ECF No. 1. On October 16, 2018, an Amended Complaint was filed. ECF No. 33. On February 26, 2019, a Second Amended Complaint ("SAC") was filed. ECF No. 84. On November 22, 2021, Plaintiff filed a Third Amended Complaint ("TAC"). ECF No. 236. On February 2, 2022, Plaintiff filed a Motion for Entry of Clerk's Default against Daniel Achille. ECF No. 253. The Clerk entered default as to Daniel Achille on February 16, 2022. ECF No 254. On March 21, 2022, Plaintiff filed a Motion for Entry of Clerk's Default against Defendants Arman Ali and Yaseen Rehman. ECF No. 260. On April 6, 2022, the Clerk entered default against Arman Ali. ECF No. 267. On June 27, 2022, Plaintiff filed a Motion for Default Judgment against Daniel Achille and Arman Ali.

ECF Nos. 287, 288. On March 24, 2023, the Court denied Plaintiff's Motion for Default Judgment against Daniel Achille and Arman Ali without prejudice as premature. ECF No. 328. On August 26, 2024, a jury trial commenced. ECF No. 423. On August 28, 2024, the third day of trial, Parties notified the Court of a settlement and Stipulation of Dismissal. ECF No. 428. On September 13, 2024, Plaintiff filed a Motion for Default Judgment against Daniel Achille and Arman Ali. ECF No. 431.

The Court's Order follows.

## II.  FACTUAL ALLEGATIONS / BACKGROUND

Plaintiff Reflex Media, Inc. ("Reflex") owns and operates a dating website (the "Website"). On August 16, 2018, Plaintiff initiated this lawsuit to seek redress from individuals who conducted a blackmail operation targeting customers of Reflex's website. The operators of the blackmail scheme extorted Reflex customers by creating decoy profiles on the Website and using the decoy profiles to contact legitimate users and obtain their personal information. Subsequently, the operators of the blackmail scheme would post users' personal information on various websites (the "Extortion Websites") with fabricated defamatory allegations. Victims were then instructed to pay the Extortion Websites or other third-party servicers ("Removal Outlets") to have the defamatory content removed.

Defendant Ali's involvement was focused on content generation for the Extortion Websites by creating decoy profiles on the Website and encouraging others to do the same. Mr. Ali's role in recruiting people to blackmail Reflex customers is exemplified by his creation of an instructional YouTube video where he demonstrated how Website members' personal information could be harvested from the Website and directed to operators of the Extortion Websites. Defendant Achille was chief operator of the Extortion Websites.

When Reflex learned that there was a blackmail scheme targeting the Website, they took steps to remedy the issue including banning decoy profiles and revoking access from those users. Despite the efforts made by Reflex to curtail the blackmail operation, Defendants persisted circumventing Reflex's efforts. Reflex brought this lawsuit in furtherance of their efforts to bring Defendant's unlawful conduct to an end.

### III. LEGAL STANDARD

The granting of a default judgment is a two-step process directed by Federal Rule of Civil Procedure 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of clerk's default based on a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is default judgment under Rule 55(b), a decision which lies within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471–72.

If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the amount of damages as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id.

### IV. DISCUSSION

#### A. Jurisdiction and Service of Process

Before entering default judgment against a non-appearing party, district courts have a duty to consider subject matter jurisdiction and personal jurisdiction. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Federal district court have original jurisdiction over civil cases arising under, among other things, the laws of the United States. 28 U.S.C. § 1331.

Reflex brings this action in federal court on the basis of federal jurisdiction under 28 U.S.C. § 133. As set forth in the Complaint, Reflex has asserted claims arising under federal law, including

a claim for violation of the Computer Fraud and Abuse Act. (28 U.S.C. § 1332). Furthermore, to the extent the Complaint includes various state law claims, they are related to the Court's original jurisdiction and the Court exercises supplemental jurisdiction over them as well. 28 U.S.C. § 1367. Accordingly, the Court has subject matter jurisdiction over the claims asserted by Reflex.

The Ninth Circuit has articulated a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Core–Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487 (9th Cir. 1993) (citation omitted).

In this instance the Court has specific personal jurisdiction over the Defaulting Defendants. The Court finds from the record that the Defaulting Defendants targeted Nevada individuals, including Website members located in the state. Consequently, the Defaulting Defendants knew Reflex would suffer the brunt of its harm in Nevada. Next, Reflex's claims arose out of the Defaulting Defendant's forum related activities. Finally, exercise of jurisdiction in this district comports with fair play and substantial justice. The Defaulting Defendants have not presented a compelling reason that would render jurisdiction unreasonable. Id. Thus, the Court concludes it may properly exercise personal jurisdiction over the Defaulting Defendants.

Courts must also determine whether there was sufficient service of process on the parties against whom default judgment is requested. See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992). In this case, the Court finds Defendant was properly served under Federal Rule of Civil Procedure 4.

**B.  Plaintiff Has Satisfied the Procedural Requirements**

As a threshold matter, Plaintiff has satisfied the procedural requirements for a default judgment against Defendants. The Clerk of Court entered default against Defendant Achille on February 16, 2022, and against Defendant Ali on April 6, 2022. Plaintiff's Motion for Default Judgment states that the Defendants are not infants, minors, or otherwise incompetent persons, and that the Servicemembers Civil Relief Act does not apply. Additionally, notice under Rule 55(b)(2) is excused because Defendant has not appeared. See Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc., 375 F.3d 922, 928 (9th Cir. 2004) (holding there was no appearance where the defendant did not file a motion with the court.) Accordingly, Plaintiff has complied with Local Rule 55-1's procedural requirements for obtaining a default judgment against Defendants.

**C. The Eitel Factors Favor Entering Default Judgment**

Next, the Court considers each Eitel factor and finds that granting default judgment against Defendants is appropriate in this case.

To begin, the Court finds the first factor favors default judgment because Defendants have declined to defend this action. Defendants failed to answer the Complaint filed over five years ago and have failed to respond to Plaintiff's Motion for Default Judgment, filed over two years ago. Because Defendants have failed to appear, Plaintiff is unable to litigate the merits of their claims.

Next, the Court examines the merits of the substantive claims and sufficiency of the Complaint and finds that the second and third Eitel factors favor judgment for Plaintiff. In the Complaint, Reflex alleged seven causes of action. The first cause of action for relief under the Computer Fraud and Abuse Act ("the CFAA"), and the second cause of action for relief under the California Unauthorized Access to Computer Data Act, Cal. Penal Code § 502(c) ("CUCA") are at issue in this motion because they are sufficient to provide the relief Reflex seeks.

To state a claim under the CFAA, a plaintiff must allege that defendants intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage or recklessly caused damage or loss. 18 U.S.C. § 1030(a)(2). Under the statute a "protected computer" is defined to include any computer "used in or affecting interstate or foreign commerce or communication." Id. at § 1030(e)(11).

The CUCA is the California corollary to the CFFA, and provides in pertinent part:

> [A]ny person who commits any of the following acts is guilty of a public offense:
>
> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive or extort, or (B) wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
>
> (3) Knowingly and without permission uses or causes to be used computer services.
>
> …
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

A "computer network" is defined to include "any system that provides communications between one or more computer systems and input/output devices, including but not limited to display terminals, remote systems, mobile devices, and printers connected by telecommunication facilities." Cal. Pen. Code § 502. In this instance, Plaintiff's CFFA claim is based on identical facts as their CUCA claim. Since the necessary elements of the CFAA do not differ materially from the necessary elements of the CUCA the Court analyzes both claims under the CFFA.

In the Complaint, Reflex adequately asserts that the computers the Website operated on were used in interstate commerce and therefore qualify as protected computers under the CFAA. Furthermore, Reflex adequately established that the Defaulting Defendants accessed their computers in violation of their Terms of Use to gather data used to extort members of the Website. Thus, the Defaulting Defendants access was without authorization and in violation of the CFAA.

Next, the Court considers the fourth Eitel factor, the amount of money at stake and the seriousness of the defendant's conduct. Reflex alleges that the extortion scheme operated by the Defaulting Defendants received hundreds of thousands of dollars from thousands of defamed victims. Reflex seeks to recover $250,403.40 for expenses incurred when the company deployed

personnel to investigate and terminate the accounts created by the Defaulting Defendants, secure its website, and address membership complaints. Reflex also seeks to recover $10,607,916.80 in unlawful revenue from victims which they argue should be disgorged. Furthermore, Reflex seeks punitive damages of $2,253,630.60 for Defaulting Defendant's behavior in this case.

The Court finds that the fifth and sixth Eitel factors favor Plaintiff. Because Defendants have failed to plead or otherwise defend in this action, the Court accepts the well-pleaded facts in the Complaint as true. See TeleVideo Sys. v. Heidenthal, 826 F.2D 915, 917-18 (9th Cir. 1987). As discussed above, Reflex has adequately alleged that the Defaulting Defendant's actions were in violation of the CFAA. Because the Defaulting Defendants have failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. The Sixth factor favors entry of default judgment when the defendant has been properly served, or the plaintiff shows that the defendant is aware of the lawsuit and has failed to answer. Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987). Plaintiff properly served Defendants with the Complaint. Given the notices delivered to Defendants regarding this action and the period of time that has elapsed since Plaintiff filed the Complaint, the Court finds that Defendants were aware of the action and have failed to respond or appear.

Finally, the seventh factor requires the Court to account for the strong policy of favoring decisions on the merits. Here, the Defaulting Defendants' failure to appear or respond suggests that a decision on the merits is not a possibility. Furthermore, under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed when a defendant fails to defend an action.

In conclusion, the Court finds Eitel factors one, two, three, four, five, and six weigh in favor of an entry of default judgment and factor seven is not dispositive to the contrary. Accordingly, because the Eitel factors favor an entry of default judgment, the Court grants the motion with respect to Plaintiff's first and second causes of action. Furthermore, the Court dismisses Plaintiff's third, fourth, fifth, sixth, and seventh causes of action as moot without prejudice because Plaintiff does not move for judgment on these claims.

**D. Plaintiff's Requested Relief**

Once liability is established by default judgment, the plaintiff must establish that the requested relief is appropriate. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Reflex seeks (1) compensatory damages, (2) to disgorge the defendants' ill-gotten profits, and (3) an award of punitive damages.

### i. Compensatory Damages

Compensatory damages are intended to redress the concrete loss that a plaintiff has suffered as a result of a defendant's wrongful conduct. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416. Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (citation omitted). "As such, their proper measure is that which will make good or replace the loss caused by the injury." Bayer v. Neiman Marcus Grp., 861 F.3d 853, 872 (9th Cir. 2017) (citation omitted).

In this instance, the compensatory damages sought by Reflex are associated with the costs incurred investigating the intrusion and implementing security mechanisms to prevent similar harm from occurring in the future. The Court finds that Reflex has adequately shown that the company spent $250,403.40 addressing the Defaulting Defendants' conduct on the Website.

### ii. Disgorgement Under the Computer Fraud and Abuse Act

18 U.S.C. § 1030(g) states that, "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." The purpose of disgorgement is to deprive a person of "ill-gotten gains" and prevent unjust enrichment. Hateley v. SEC, 8 F.3d 653, 655 (9th Cir. 1993). Accordingly, district courts have broad equity powers to order the disgorgement of ill-gotten gains. SEC v. Global Express Capital Real Estate Inv. Fund, 289 Fed. Appx. 183, 190 (9th Cir. 2008). A default judgment must be supported by specific allegations as to the exact amount of damages. The Plaintiff must then prove-up the amount of damages claimed. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).

In this instance, Plaintiff requests disgorgement in the amount of $10,607,916.80. In reaching this figure, Plaintiff relies solely on the admittedly speculative calculations outlined in

the declaration of former Reflex employee and consultant Daryl Webster. The Court finds that Reflex has not provided adequate support regarding its calculation of profits to be disgorged by the Defaulting Defendants. The Court will therefore not order disgorgement in this case.

### iii. Punitive Damages

When assessing punitive damages courts should consider: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio to the actual harm inflicted on the plaintiff; and (3) civil or criminal penalties that could be imposed for comparable misconduct. Arizona v. Asarco LLC, 733 F.3d 882, 885 (9th Cir. 2013) (citation omitted). These three guideposts need not be rigidly applied. They provide a framework and must be viewed in the context of the case. Id. Furthermore, "The appropriate relationship between punitive and compensatory damages is not demonstrated simply by concluding the two figures fit neatly into a mathematical formula. The question is whether the difference between the two figures is so wide that the punitive damages have been divorced from the societal goals of retribution and deterrence." Boyle v. Lorimar Prods., 13 F.3d 1357, 1361 (9th Cir. 1994).

In this instance, Reflex requests that the Court order an award of punitive damages that is nine times the requested compensatory damages, $2,253,630.60. Applying the guideposts articulated by the Ninth Circuit in Arizona v. Asarco LLC, the Court denies Reflex's request for punitive damages.

First, the Court finds that Reflex has adequately articulated the degree of reprehensibility of the Defaulting Defendants' conduct. Next, the Court examines the ratio to the harm inflicted on the Reflex. While Reflex has proven that the actions of the Defaulting Defendants were harmful, Reflex has not adequately articulated why the imposition of punitive damages nine times the amount of the requested compensatory damages is justified. Finally, Reflex fails to articulate the civil or criminal penalties that could be imposed for comparable misconduct. Furthermore, Reflex does not articulate why an award of $2,253,630.60 in punitive damages, which is over two million dollars more than the requested compensatory damages would advance the societal goals of retribution or deterrence. Thus, the Court will only award punitive damages in the amount of $800,000. This amount is supported by the record here.

### iv. Permanent Injunction

The Ninth Circuit has held that district courts should apply a four-factor test before issuing a permanent injunction considering a plaintiffs showing of: (1) irreparable injury; (2) inadequacy of legal remedies; (3) the balance of hardships; (4) public interest. EEOC v. BNSF Ry. Co., 902 F.3d 916, 928 (9th Cir. 2018). Reflex requests the Defaulting Defendants be enjoined from ever using the Website again, selling content from the Website, or aiding or abetting any other person or entity to do the same on their behalf.

The Court finds that Reflex has adequately plead that they faced irreparable harm as a result of the Defaulting Defendants' extortion scheme targeting users of the Website. While Reflex has sought legal remedies, the Defaulting Defendants failure to engage with the instant action has been demonstrative of the inadequacy of the legal remedies. Next, the balance of hardships weighs in favor of granting the permanent injunction because Reflex is still at risk of being targeted by the Defaulting Defendants. Alternatively, an injunction preventing the Defaulting Defendants from engaging with the Website will not cause them harm. Finally, the public interest weighs in favor of granting the permanent injunction. Innocent members of the public were targeted and extorted by the Defaulting Defendants. A permanent injunction will protect the public from further harm. Thus, the Defaulting Defendants are enjoined from: (a) accessing or attempting to access Reflex's Website, computers, computer systems, computer network, computer programs, and from inducing, encouraging, causing, contributing to, aiding or abetting any other person or entity to do the same on their behalf; (b) using, offering, or selling any content obtained from Reflex's Website; and (c) engaging in any business designed to receive money in exchange for removing content from a website.

### V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment is **GRANTED.** The Court awards compensatory damages in the amount of **$250,403.40** and punitive damages in the amount of **$800,000**. These damages are awarded jointly and severally against Defendants Daniel Achille and Arman Ali.

**IT IS FURTHER ORDERED** that Defendants Daniel Achille and Arman Ali are **PERMANENTLY ENJOINED** from (a) accessing or attempting to access Reflex's Website, computers, computer systems, computer network, computer programs, and from inducing, encouraging, causing, contributing to, aiding or abetting any other person or entity to do the same on their behalf; (b) using, offering, or selling any content obtained from Reflex's Website; and (c) engaging in any business designed to receive money in exchange for removing content from a website.

**IT IS FURTHER ORDERED** that Plaintiff's third, fourth, fifth, sixth, and seventh causes of action are dismissed as moot without prejudice as they relate to Defendants Daniel Achille and Arman Ali.

**IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to enter judgment in favor of Plaintiff against Defendants Daniel Achille and Arman Ali.

**DATED:** September 26, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**